EL PUEBLO DE PUERTO RICO, peticionario, *v.* JORGE MOJICA CRUZ, recurrido.

Número: O-83-471          Resuelto: 29 de junio de 1984

Miguel Pagán, Procurador General Interino, y Miguel A. Santana Bajur, Procurador General Auxiliar, abogados de El Pueblo; Apolinar Rodríguez, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

El presente recurso plantea dos cuestiones de importancia en relación con el procedimiento para dispensar justicia en casos penales. La primera se refiere al término de noventa días que estipula la Regla 185 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, para, en bien de la justicia, rebajar una sentencia. Resolvemos que tal limitación no afecta la facultad del tribunal para atender y resolver una petición hecha a tal fin, presentada dentro del expresado término. Consideramos en segundo lugar la procedencia de las alegaciones preacordadas y establecemos normas para regir su tramitación.

I

El aquí recurrido fue acusado, en unión a otras dos personas, por los delitos de robo (dos cargos) e infracciones de los Arts. 8, 6 y 4 de la Ley de Armas, 25 L.P.R.A. secs. 418, 416 y 414, respectivamente. Llamados los casos para juicio comparecieron los imputados asistidos de sus abogados y, luego de anunciar las partes estar preparadas, hicieron alegación de culpabilidad por los cargos bajo la Ley de Armas, y en cuanto a los casos por robo, alegaron culpabilidad por apropiación ilegal agravada. El fiscal se allanó bajo condición de que los imputados restituyeran la cantidad de mil dólares a la alegada víctima.

El juez, luego de examinar a los imputados en relación con dicha alegación la aceptó "por entender que ha sido hecha libre, espontánea, voluntaria e inteligente" y procedió

a declararles culpables conforme alegaron. En ese momento dispuso que se hiciera una investigación e informe por el oficial probatorio y, sometido el mismo, dictó sentencia contra el aquí recurrido el 21 de enero de 1983 en que le impuso seis años de prisión en cada uno de los cargos por apropiación ilegal agravada, tres años por el Art. 8 y tres por el Art. 6 de la Ley de Armas y seis meses por el Art. 4 de dicha ley. Dispuso además la suspensión de las sentencias bajo determinadas condiciones que el imputado debía cumplir.

El 20 de abril de 1983, es decir, ochentinueve días después, el aquí recurrido presentó moción en que solicitó que se rebajaran las penas en atención a que "es primer ofensor", sin antecedentes penales. Al día siguiente, el tribunal señaló el 22 de abril de 1983 para atender dicha moción. *Exhibit* VIII. Así se hizo en esa fecha, a los noventiún días de dictada la sentencia, cuando, sin objeción del fiscal, dispuso reducir a cuatro años las penas por los cargos de apropiación ilegal agravada.

No obstante, el fiscal solicitó reconsideración y argumentó que la rebaja en la calificación del delito de robo se hizo en obediencia a una transacción entre las partes; que el tribunal fue benigno al imponerle seis años de reclusión, suspendida, habiendo impuesto diez años a otro coacusado; que no se presentó prueba de atenuantes; y que el tribunal carecía de jurisdicción para actuar conforme a la Regla 185 de Procedimiento Criminal, que dispone un término de noventa días para ello. El tribunal denegó la reconsideración bajo la razón de que no hubo oposición a la moción del imputado, aquí recurrido, durante la audiencia para considerarla, e hizo constar que "utilizó como base para reducir la pena el informe del Oficial Probatorio". *Exhibit* VIII.

A petición del Procurador General expedimos auto de *certiorari* para examinar sus planteamientos, que son una reiteración de lo alegado por el fiscal y a los que hemos hecho referencia. Resolvemos sin el beneficio de los puntos

de vista de la representación legal del recurrido, que no ha comparecido en autos.

## II

Atendemos, en primer lugar, la alegación de falta de jurisdicción.

La Regla 185(a) de Procedimiento Criminal dispone, en lo que aquí nos atañe, que el tribunal sentenciador "podrá, por causa justificada y en bien de la justicia, rebajar una sentencia dentro de los noventa días de haber sido dictada, siempre que la misma no estuviere pendiente en apelación". Como la moción para que se rebajara la condena se presentó dentro del término de noventa días, la cuestión a decidir es si ese término, una vez transcurre, extingue la jurisdicción del tribunal sentenciador para actuar, aunque la moción de rebaja se haya presentado antes de su vencimiento.

El Estado invoca a su favor la autoridad de *Pueblo* v. *Tribunal Superior*, 94 D.P.R. 220 (1967). Allí expresamos que "si se hubiese tratado de una rebaja de la sentencia ya tampoco tenía facultad el Tribunal para hacerlo pues habían transcurrido más de los 90 días de aquélla haber sido dictada". Íd., pág. 223. Esta expresión, sin embargo, no puede invocarse como antecedente, pues lo cierto es que en aquel caso tanto la solicitud del reo como la resolución del tribunal, que dejó sin efecto el fallo condenatorio, se produjeron casi un año después de haberse dictado la sentencia. De igual modo ocurrió en *Pueblo* v. *Tribunal Superior*, 91 D.P.R. 539 (1964), en que la solicitud para que el tribunal dispusiera que dos sentencias de asesinato en segundo grado se cumplieran de forma concurrente en vez de consecutivamente, se hizo a los quince años de éstas haber sido dictadas. En este último caso expresamos: "En el caso de autos *la petición* y la modificación de la sentencia se hizo [*sic*] a los quince años de haber sido ésta dictada." (Énfasis suplido.) Íd., pág. 544. Esta expresión, distinto al *dictum* del caso

anterior, constituyó el *ratio decidendi* de nuestro dictamen. Pero ninguno de estos dos casos, por supuesto, tuvo que considerar o resolver el asunto que está hoy ante nosotros por primera vez. [1]

■ Generalmente, los términos provistos por las leyes y reglas procesales son para que las partes actúen en determinado plazo y las consecuencias de la inacción varían con frecuencia. En ocasiones la parte se expone simplemente a que el juez resuelva el incidente sin contar con el beneficio de los argumentos contrarios. Otras veces la consecuencia es una sanción económica o disciplinaria que no trasciende de ese punto. Pero en un número, aunque reducido, de ocasiones la inacción acarrea la pérdida de algún derecho de otro modo reconocido. Este es el caso, por ejemplo, del derecho de apelación, *Vélez* v. *Doe*, 79 D.P.R. 643 (1956); de la moción de nuevo juicio, *Pueblo* v. *Matos Rodríguez*, 91 D.P.R. 635, 639 (1965), y otros. De ahí que la jurisprudencia haya elaborado los conceptos de términos discrecionales, términos directivos, términos de estricto cumplimiento y términos fatales o jurisdiccionales.

En lo que concierne a los términos para resolver, este Tribunal ha sido consecuente en aplicar la norma general de que estos términos son directivos. *Rodríguez* v. *Alcover*, 78 D.P.R. 822 (1955) (término de cuarenta y cinco días dispuesto por las Reglas de Administración del Tribunal de Primera Instancia para dictar sentencia); *El Mundo, Inc.* v. *Tribunal Superior*, 92 D.P.R. 791 (1965) (término de cinco días para resolver una moción de reconsideración de sentencia cuando la moción ha sido presentada en tiempo, siempre

---

[1] En *Pueblo* v. *Tribunal Superior*, 104 D.P.R. 650 (1976), accedimos a que el tribunal sentenciador reconsiderara dos sentencias en virtud de moción presentada más de cuatro años después. Resolvimos, no obstante, que la Regla 185(a) de Procedimiento Criminal no es aplicable a las sentencias dictadas bajo la Ley de Sustancias Controladas cumplidas en régimen de libertad a prueba. Señalamos, además, en la pág. 652: "Este Tribunal no ha de detenerse ante una interpretación literal de reglas para corregir un castigo a todas luces desproporcionado y exagerado."

que a la fecha en que el tribunal actúe no se le hubiere privado de jurisdicción por razón de haberse interpuesto contra la sentencia un recurso de apelación o de revisión o no hubiere expirado el término para interponer dichos recursos); *Junta Rel. Trabajo* v. *Corona Brewing Corp.*, 83 D.P.R. 40 (1961) (término para emitirse laudo por el árbitro); *Senior Las Marías Corp.* v. *Registrador*, 113 D.P.R. 675, 683 n. 5 (1982) (término de treinta días para que el registrador resuelva un escrito de recalificación). Por vía de excepción, cuando el legislador ha querido que un término para resolver un asunto sea fatal o jurisdiccional lo establece expresamente en la ley. *G. M. Overseas Dist. Corp.* v. *D.A.C.O.*, 114 D.P.R. 5 (1983) (término de treinta días para que el Secretario del DACO resuelva una moción de reconsideración en un procedimiento cuasijudicial).

Cuando una ley o regla ordena o permite a una parte hacer algo, cualquier efecto perjudicial resultante de su inacción es atribuible exclusivamente a dicha parte y no a otra. Y es lógico que así sea pues, a no ser que medien circunstancias que no vienen al caso, un litigante no debe sufrir las consecuencias de la inacción de la parte llamada a actuar.

En cambio, el término que las reglas procesales o de administración proveen para la actuación judicial está matizado por una concepción distinta. El juez debe estar guiado siempre por el término dispuesto en la regla o, de modo supletorio, por la disposición de las Reglas de Administración del Tribunal de Primera Instancia y, en ambos casos, por su sentido del deber. Más aún, excepto cuando la propia ley establece el efecto de la inacción del juez (como, por ejemplo, en el caso de la moción de reconsideración de sentencia en una acción civil en que se establece que transcurrido el término de diez días sin que el juez la haya resuelto, se entenderá que la misma ha sido rechazada de plano), en las demás ocasiones la inercia del juez de instancia da derecho al ejercicio del recurso extraordinario de *manda-*

*mus* o a que se tomen medidas correctivas o disciplinarias en su contra, pero jamás a la confiscación de una reclamación o de un derecho oportunamente exigido.

La promulgación de términos perentorios, para apremiar a los jueces a que decidan los asuntos que se presentan ante su consideración, cumple la importante función de que las partes obtengan una adjudicación oportuna de sus controversias y que la sociedad recobre lo antes posible el equilibrio que presupone quebrado todo pleito entre ciudadanos. Pero esta importante función no debe estar aprisionada por interpretaciones mecánicas que dejen al juez sin tiempo para actuar cuando, como en este caso, se solicita su intervención en el postrer momento del plazo otorgado por la ley para presentar la moción.

Por otro lado, la Regla 35 de Procedimiento Criminal federal, ha sido interpretada de forma similar. Aunque el Tribunal Supremo de Estados Unidos ha dicho que el término de la Regla 35 (120) días es jurisdiccional, *United States* v. *Addonizio*, 442 U.S. 178, 189 (1979), los tribunales de apelaciones de circuito han llegado al consenso de que dicho término es para que el acusado presente la moción y que los tribunales, luego de expirado el plazo, retienen jurisdicción para resolverla, si ésta fue presentada oportunamente. Véase *United States* v. *Krohn*, 700 F.2d 1033, 1035 (1983), y casos allí citados.

█ Es por esto que no podemos resolver que un reo que presenta a tiempo una moción de rebaja de sentencia puede ser afectado en su derecho a que el magistrado pase juicio sobre los méritos de su solicitud y a que, incluso, reduzca los términos de la sentencia impuesta, por el solo hecho de que el tribunal actúe fuera del término de los noventa días que establece la Regla 185(a). En el caso de autos la norma encuentra mejor fundamento en el hecho escueto de la celeridad (dos días) con que el juez sentenciador adjudicó la

moción de reducción de sentencia presentada oportunamente por el convicto. (²)

### III

Examinamos a continuación el planteamiento de que las sentencias dictadas se basaron en alegación de culpabilidad negociada entre las partes. Es lo que en inglés se conoce como *plea bargaining* y que en nuestro medio se ha traducido como alegaciones preacordadas.

No es infrecuente el reclamo ante nos, en particular de parte de los acusados, de que la sentencia impuéstale fue el producto de una alegación preacordada, *Pueblo* v. *Benítez*, 113 D.P.R., 610 (1982), o que se impuso una sentencia más severa que la negociada con el fiscal. *Díaz Díaz* v. *Alcaide*, 101 D.P.R. 846, 848 (1973); *Pueblo* v. *Liceaga*, 36 D.P.R. 443 (1927).

El problema que nos plantean los apuntamientos de esta naturaleza es que no hallan base en los autos. No podemos por más tiempo ignorar que la negociación de alegaciones de culpabilidad es una práctica generalizada desde hace tiempo en el sistema procesal, en lo criminal. Se le oculta como si fuese algo turbio y misterioso, pero es una realidad que no puede soslayarse por más tiempo. Hay que descorrer su velo de misterio y dejar sentado, a plena luz, que la negociación de alegaciones de culpabilidad es una práctica de gran utilidad para el sistema de impartir justicia y debe estimularse. Véanse, *e.g.*, *Bordenkircher* v. *Hayes*, 434 U.S. 357, 361 (1978); *Blackledge* v. *Allison*, 431 U.S. 63, 71 (1977); *Santobello* v. *New York*, 404 U.S. 257, 260–261 (1971). Sin las alegaciones preacordadas sería muy difícil, si no imposible, enjuiciar a todas las personas acusadas de cometer delitos dentro de los términos mandados por el ordenamiento procesal y por la Constitución.

---

(²) Es de notar, además, que si bien la decisión se produjo a los noventiún días, el tribunal actuó sobre la moción del recurrido el día número noventa, cuando señaló el día siguiente para escuchar a las partes.

La práctica de negar para el récord que el acusado ha recibido una promesa del fiscal de archivarle algún cargo o de solicitar al juez que sea benigno en la imposición de la pena a cambio de una alegación de culpabilidad ha sido severamente criticada. Comentario, *Principles of Plea Bargaining*, 9 Loy. U. Chi. L.J. 175, 177–178 n. 8 (1977); R. C. Underwood, *Let's Put Plea Discussions—and Agreements—on Record*, 1 Loy. U. Chi. L.J. 1, 6–8 n. 14 (1970); President's Commission on Law Enforcement and Administration of Justice, Task Force Report: The Courts, 1967, págs. 9–13.

El Tribunal Supremo federal ha sostenido la validez constitucional de la negociación sobre alegaciones de culpabilidad, *Brady* v. *United States*, 395 U.S. 238, 242–243 (1969) y ha sugerido que, como cuestión de derecho constitucional, éstas deben hacerse constar en el récord. *Boykin* v. *Alabama*, 395 U.S. 238, 243–244 (1969). En este último caso el tribunal afirmó que siempre que un acusado afronte una pena de prisión, el juez debe dejar un récord claro y adecuado para cualquier procedimiento de revisión de la condena que pueda instarse con posterioridad. La práctica de negociar alegaciones de culpabilidad ha sido tan aceptada, que el propio tribunal ha resuelto que ni siquiera infringe la Constitución federal el hecho de que el fiscal presente contra un acusado una nueva acusación con alegación de delincuencia habitual, que implica una condena mucho más severa, por el solo hecho de que dicho acusado rehusara declararse culpable del delito originalmente imputado. *Bordenkircher* v. *Hayes*, supra.

Hoy día las alegaciones preacordadas han sido incorporadas al procedimiento criminal federal. Fed. Rules Cr. Proc. Rule 11(e) (1), 18 U.S.C.A. Véase al efecto el reciente caso de *Mabry* v. *Johnson*, 44 CCH S. Ct. Bull. P. 3351 (1984). Están, además, ampliamente respaldadas por prestigiosos estudios e instituciones. A.B.A. Standards for Criminal Justice, 14-3.1 (1980); A.L.I. Model Code of Pre-Arraignment Procedure Sec. 3503.(1) (1975); Unif. R. Crim. Proc. 443(a)

(National Conference of Comm'rs on Uniform State Laws 1974). Solamente una entidad las repudia: National Advisory Commission on Criminal Justice Standards and Goals, Task Force on Courts Sec. 3.1 (1973).

Nuestra jurisdicción se ha mantenido rezagada en este importante aspecto de la justicia criminal, no obstante las fuertes críticas al sistema imperante y las vehementes recomendaciones de que se adopte el procedimiento conducente a la aceptación de las alegaciones preacordadas. Véase el Informe de la Comisión para el Estudio de la Fiscalía y la Representación Legal del Estado, al Consejo sobre la Reforma de la Justicia en Puerto Rico: Fiscalía, de 1974, págs. 241 *et seq.*; y el Informe del Comité de Reglas de Procedimiento Criminal de la Conferencia Judicial, 1978, Regla 81 del Proyecto de Reglas de Procedimiento Criminal.

■ En el descargo de nuestra obligación de pautar el derecho procesal y particularmente de impartir certidumbre y fluidez a los procedimientos, *cf. Meléndez* v. *Levitt & Sons of P.R.*, 104 D.P.R. 797, 806–810 (1976); *Urrutia* v. *A.A.A.*, 103 D.P.R. 643, 651–652 (1975), no debemos aplazar por más tiempo la aceptación y reglamentación del sistema de alegaciones preacordadas, independientemente de que en su oportunidad se incorpore formalmente al cuerpo de Reglas de Procedimiento Criminal.[3] A este efecto, y tomando como guía la Regla 81 del Proyecto de Reglas de Procedimiento Criminal a que hemos aludido, que a su vez se basa en la Regla 11(e)(1) de las federales, adoptamos el procedimiento que exponemos a continuación:

1. El fiscal y el imputado, por mediación de su abogado, podrán iniciar conversaciones con miras a acordar que, a cambio de una alegación de culpabilidad por el delito alegado en la acusación o denuncia, o por uno de grado inferior o relacionado, el fiscal se obliga a uno o varios de

[3] Nótese que en la jurisdicción federal así se hizo, y fue luego de la decisión en *Santobello* v. *New York*, 404 U.S. 257 (1971), que se enmendó la Regla 11 federal para incorporar el sistema de alegaciones preacordadas.

los siguientes cursos de acción: (a) solicitar el archivo de otros cargos pendientes; (b) eliminar la alegación de reincidencia o delincuencia habitual; (c) recomendar una sentencia en particular o no oponerse a la solicitud que haga la defensa sobre una sentencia específica, entendiéndose que ni lo uno ni lo otro serán obligatorios para el tribunal, o (d) acordar que determinada sentencia específica es la que dispone adecuadamente del caso. El tribunal no participará en estas conversaciones.

2. De llegarse a un acuerdo, las partes notificarán de sus detalles al tribunal en corte abierta, o en cámara si mediare justa causa para ello. Dicho acuerdo se hará constar en récord. Si el acuerdo se refiere a alguno de los cursos de acción especificados en los incisos (a), (b) y (d) del párrafo que antecede, el tribunal podrá aceptarlo o rechazarlo, o aplazar su decisión hasta recibir y considerar el informe pre-sentencia. Si el curso de acción acordado fuere del tipo especificado en el inciso (c) de dicho párrafo el tribunal advertirá al imputado que si la recomendación del fiscal o la solicitud de la defensa no es aceptada por el tribunal, el imputado no tendrá derecho a retirar su alegación.

3. Si la alegación preacordada es aceptada por el tribunal, éste informará al imputado que la misma se incorporará y se hará formar parte de la sentencia.

4. Si la alegación preacordada es rechazada por el tribunal, éste así lo informará a las partes y advertirá al imputado personalmente en corte abierta, o en cámara si mediare justa causa para ello, que el tribunal no está obligado por el acuerdo, y brindará al imputado la oportunidad de retirar su alegación. Le advertirá, además, que si persiste en su alegación de culpabilidad, la determinación final del caso podrá serle menos favorable que lo acordado entre su abogado y el fiscal. De este trámite se tomará constancia en el récord.

5. La notificación al tribunal sobre una alegación prea-

cordada se hará antes del juicio, preferiblemente en el acto de lectura de la acusación, pero el tribunal podrá, en el ejercicio de su discreción, si las circunstancias lo ameritaren, permitirlo en cualquier otro momento.

6. La existencia de una alegación preacordada, sus términos o condiciones, y los detalles y conversaciones conducentes a la misma no serán admisibles contra el imputado en ningún procedimiento criminal, civil o administrativo si la alegación preacordada hubiere sido rechazada por el tribunal o invalidada en algún recurso posterior, o retirada válidamente por el imputado. Lo anterior será admisible por excepción en un procedimiento criminal por perjurio contra el imputado, basado en manifestaciones hechas por él bajo juramento.

7. Al decidir sobre la aceptación de una alegación preacordada el tribunal deberá cerciorarse de que ha sido hecha con pleno conocimiento, conformidad y voluntariedad del imputado; que es conveniente a una sana administración de justicia, y que ha sido lograda conforme a derecho y a la ética. A este fin, el tribunal podrá requerir del fiscal y del abogado del imputado aquella información, datos y documentos que tengan en su poder y que estime necesarios, y podrá examinar al imputado y a cualquier otra persona que a su juicio sea conveniente.

El reclamo que hace el Estado de que la sentencia impuesta fue el resultado de una alegación preacordada parece implicar que el tribunal estaba obligado a dictar y a mantener determinada sentencia. Ello es inaceptable. La sentencia a imponerse puede ser objeto de recomendación, pero sin que venga obligado el tribunal a aceptarla. La sentencia no puede ser comprometida por acuerdo de las partes. La discreción del juez a este respecto está arraigada en el propio texto de las Reglas 70, 71 y 72 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Esa discreción continuará siendo función exclusiva del juez bajo el sistema de alegaciones preacordadas. Es de notarse, además, que no hay

base alguna en el récord para sostener que el tribunal de instancia se comprometiera a imponer determinada sentencia. No se cometió el error imputado.

## IV

■ Como penúltimo error, el Estado apunta que las pruebas de atenuantes no se presentaron antes del acto de la imposición de las sentencias. La Regla 171 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, provee para la vista de circunstancias atenuantes a los fines de la imposición de la pena. Ello presupone que la solicitud debe hacerse antes de que aquélla se dicte. Pero eso no significa que una vez dictada la sentencia el juez está impedido de considerar circunstancias atenuantes con el propósito de ejercer la facultad de reconsideración que por otro lado le confiere la citada Regla 185(a). Interpretar lo contrario sería recortar innecesariamente el alcance de esta última. Del récord se desprende que el juez sentenciador no basó la reducción de la pena en el argumento invocado por el convicto en el sentido que era primer ofensor, sino en el informe pre-sentencia y probablemente en el hecho de que el convicto estuvo de acuerdo en indemnizar a las víctimas por la pérdida económica de éstas. (Resolución de 5 de mayo de 1983.) Esto de por sí es suficiente para que no intervengamos con la discreción ejercida por el tribunal a quo.

Por último, el Estado plantea que el término de seis años originalmente impuesto fue benigno para el acusado. El Estado lo que pretende es que dejemos sin efecto la sentencia impuesta en reconsideración y restituyamos la original. Mas no aduce para ello ningún fundamento o circunstancia que amerite que intervengamos con una discreción debidamente informada en un informe presentencia. De hecho, el Estado ni siquiera alega que el tribunal abusó de su discreción al rebajar la pena.

## V

Por los fundamentos anteriormente expuestos, *se expedirá el auto solicitado y se confirmará la resolución recurrida.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión.