# 98 DTA 187

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

JOSE J. MORALES H/N/C SUPERMERCADO MORALES
Recurrente

v.

MUNICIPIO DE SAN JUAN; ASOCIACION DE VECINOS TULIP MONTEVERDE, INC.;
ASAMBLEA MUNICIPAL DE SAN JUAN
Recurridos

Núm. KLRA-97-00100

San Juan, Puerto Rico, a 22 de abril de 1998

Panel integrado por su Presidenta, Jueza Fiol Matta,
la Jueza Rodríguez de Oronoz y el Juez Gierbolini

Fiol Matta, Jueza Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Se recurre de la Resolución Núm. 35, Serie 1996-97, aprobada por la Asamblea Municipal de San Juan el 5 de diciembre de 1996. Esta autorizó a la recurrida Asociación de Vecinos Tulip Monteverde, Inc. *"a controlar el acceso vehicular y peatonal"* instalando un portón movible en el norte de la Calle Tulip y una verja fija y portón de salida de emergencia en la misma Calle Tulip con esquina a la Calle Court. La resolución, según expresa, constituyó un *"Dictamen Preliminar"* que debía ser aprobado por el 75% de los propietarios. El 7 de febrero de 1997 la Directora de la Unidad de Control de Acceso del Municipio de San Juan, Lcda. Lilliam Cruz Fortier certificó que había recibido *"las declaraciones juradas sometidas por la Asociación promovente."*.. y haberlas archivado quedando en vigor la Resolución número 35, Serie 1996-97."

El recurrente, quien es dueño y opera un negocio de supermercado en el área adyacente al control de acceso, recurre ante nosotros y alega que la resolución objeto de este recurso de revisión es nula, por haberse emitido el 5 de diciembre de 1996, más de diez (10) días laborables después de la fecha de la celebración de la última vista, el 8 de noviembre de 1995. También expone que la resolución no armoniza el interés de los ciudadanos residentes del sector afectado con los derechos de propiedad y de libertad del compareciente y de otros vecinos de áreas aledañas. Por último, alega que el control de acceso resulta indebidamente oneroso para el recurrente al prohibir el acceso a los vecinos del área al lugar donde ubica el negocio. Solicitud de revisión, pág. 2.

El primer error alegado se refiere a lo dispuesto en la sección 3(d) de la Ley de Control de Acceso, 23 L.P.R.A. 64(D), según la cual: *"El municipio emitirá su decisión sobre toda solicitud de permiso de control de acceso no más tarde de los diez (10) días laborables siguientes a la fecha de celebración de la última vista pública."*

Nos parece evidente que el error no se cometió. Como regla general los términos para decidir son directivos, a menos que se establezca expresamente que los mismos son mandatorios. *Pueblo v. Mojica*, 115 D.P.R. 569 (1984); *Pérez Rodríguez v. Puerto Rico Parking Systems Inc.*, 119 D.P.R. 634 (1987). Véase *Rivera Ramos v. DACO*, sentencia de 13 de febrero de 1997, Pesante Martínez, Jueza Ponente, **97 D.T.A. 20.**

En cuanto al segundo error, el recurrente alega que los vecinos de las áreas circundantes *"no tendrán acceso al supermercado, como lo han tenido hasta ahora por la Calle Tulip, sino que tendrán que usar el otro acceso que desemboca en área conocida como Los Paseos, haciendo uso de una rampa de reciente construcción...".* También alega que *"esos residentes verán limitados [sic] su prerrogativa*

*de una alternativa para salir de su vecindario...".* Solicitud de revisión, pág. 5.

Es menester señalar que el recurrente pretende alegar y defender derechos de terceros que no han acudido ante este Tribunal y cuya representación no ostenta. No obstante, del expediente apelativo y del propio escrito del recurrente se desprende que se han construido unas avenidas marginales y rampas para permitir el acceso al Expreso Las Américas de los vecinos de las Urbanizaciones Vilanova y Parque Forestal y de los Condominios Skytower, a un costo de alrededor de un millón de dólares. El Municipio no sólo consideró esta realidad en su dictamen, sino que fue parte activa en gestionar estas vías de acceso. Además, según explica el informe del Municipio, según el Plan de Transportación de la Región Metropolitana de San Juan, la Calle Tulip no es una vía primaria o secundaria ni tampoco una calle arterial o colectora. Por el contrario, es una calle local, *"cuya función principal es la de proveer acceso a las propiedades colindantes, siendo tal función de acceso dominante sobre la de tránsito directo ".* (Informe y Recomendaciones, páginas 12-13).

Surge del expediente que el Municipio celebró vistas, hizo estudios y sopesó los intereses del sector. Esto lo hizo con relación no sólo a los vecinos de la Calle Tulip, sino los de la Calle Poppy y las comunidades aledañas que se pudieran ver afectadas por lo solicitado. Al así hacerlo recibió datos, hizo inspecciones y analizó la situación de la totalidad de las comunidades que pudieran quedar afectadas. Una vez considerados todos los factores planteados, incluyendo la construcción de las nuevas rampas de acceso directo al Expreso Las Américas, el Municipio dispuso la aprobación de los controles de acceso de la Calle Tulip y de la Calle Poppy, así como el control de acceso de la Urbanización Borínquen Gardens. Por tanto, no vemos base para concluir que el Municipio erró al determinar que tanto el recurrente como los vecinos del sector cuentan con accesos adecuados a sus vecindarios.

En tercer lugar, alega el recurrente que el control de acceso resulta oneroso para el pues *"afectaría adversamente el negocio de supermercado del recurrente al negarle acceso directo al mismo a sus númerosos clientes y parroquianos...".* De los propios escritos el recurrente, así como del Informe y Recomendación sometido por el Municipio, se desprende que el Supermercado Morales intervino y tomó parte activa en este procedimiento. Los argumentos utilizados en su oposición al control de acceso fueron sopesados por el Municipio en unión a los demás factores pertinentes. Su planteamiento sobre la adecuacidad del acceso que resulta después de implantado el control de acceso de la Calle Tulip se atiende a la página 35 del Informe y recomendación sobre control de acceso del sector Borínquen Gardens, de la siguiente forma:

*"Respecto al acceso al Supermercado Morales, la Ferretería Los Bigios y los otros negocios del Camino Borínquen, debemos señalar que existe acceso directo a dichos negocios por la Avenida Las Cumbres y que nos tomó tres minutos llegar desde el semáforo de la intersección del expreso hasta el supermercado, incluyendo el detenernos en la señal de luz roja de la intersección con la Avenida Emiliano Pol."*

El recurrente no refuta lo anterior ni aduce ausencia de evidencia sustancial para sostener esta determinación, ni para sostener las demás determinaciones de la Directora de la Unidad de Control de Acceso y el Director de la Oficina de Planificación y Presupuesto del Municipio, contenidas en dos informes en extremo fundamentados, uno referente a la Calle Tulip y el otro que se hace formar parte de éste, que se refiere al control de acceso de la urbanización colindante Borínquen Gardens. Véase página 12 del Informe y Recomendación sobre Asociación de Vecinos de Tulip Monteverde, Inc. de 5 de septiembre de 1996 y la página 3 del Informe de la Comisión de Control de Acceso y Cierre de las Calles y Venta de Senderos a Pasos de Peatones de la Asamblea Municipal, correspondiente a la reunión de 21 de noviembre de 1996. Ambos informes fueron aprobados por la Asamblea Municipal el 25 de noviembre de 1996, según consta en el Acta Número 11 de la sesión ordinaria de ese día.

Los procedimientos y las decisiones de un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Facultad de las Ciencias Aplicadas v. Consejo de Educación Superior,* ___ D.P.R. ___ (1993), **93 J.T.S. 88.** Así, si la decisión impugnada está sostenida por evidencia sustancial, que es *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión ", Hilton Hotel v. Junta de Salario Mínimo,* 74

D.P.R. 670 (1954), la misma debe ser confirmada. *Rodríguez Pagán v. Depto. de Servicios Sociales,* ___ D.P.R. ___ (1993), **93 J.T.S. 14,** a la pág. 10783; *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1987). Esta regla de la evidencia sustancial desarrollada por la jurisprudencia fue incorporada a nuestra legislación en la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. Sec. 2175. En armonía con la finalidad perseguida, la revisión judicial de decisiones administrativas debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. *Torres González v. Star Kist Caribe,* (1994), **94 J.T.S. 5,** a la pág. 11458; *Fuertes v. Administración de Reglamentos y Permisos,* ___ D.P.R. ___ (1993), **93 J.T.S. 165,** a la pág. 11385; *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Así, el estándar de revisión judicial en materia de decisiones administrativas consiste en resolver si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por la agencia y la interpretación de sus guías, reglas o reglamentos es razonable y compatible con el propósito de la ley, los tribunales no deben sustituirlos por su propio criterio.

Por otra parte, la decisión de un municipio de autorizar el establecimiento de un sistema de control de acceso bajo la Ley Núm. 21, *supra,* es un ejercicio de reglamentación del uso de las calles, al amparo de una delegación del poder de razón del estado. Esta es un área donde tradicionalmente se ha reconocido una amplia discreción a los municipios. *López Fed. Coms. Unidos v. Municipio de San Juan,* 121 D.P.R. 75, 88 (1988); *Pueblo v. Miranda,* 56 D.P.R. 601 (1940); *Pueblo v. Maymón,* 24 D.P.R. 61 (1916); *Pueblo v. Padilla,* 20 D.P.R. 276 (914); *Sucesión Bianchi v. Ayuntamiento,* 6 D.P.R. 145 (1904).

En el caso que nos ocupa, resolvemos que la determinación del Municipio de San Juan autorizando el control de acceso solicitado por la Asociación de Residentes recurrida está avalada por evidencia sustancial obrante en el expediente administrativo. Además, la decisión que es objeto de impugnación es razonable y compatible con los propósitos legislativos esbozados en la ley de referencia. Por su parte, el recurrente no ha descargado su obligación de demostrar irregularidad alguna, ni proceder ilegal, arbitrario o caprichoso que justifique nuestra intervención para dejar sin efecto la decisión recurrida. Siendo ello así, resulta procedente expedir el auto y confirmar la resolución recurrida.

Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General