MUNICIPIO DE SAN JUAN, demandante y peticionario, *v.* JUNTA DE CALIDAD AMBIENTAL y ADMINISTRACIÓN DE REGLAMENTOS Y PERMISOS, demandadas y recurridas.

*Número:* CC-99-446      *Resuelto:* 25 de junio de 1999

*Alberto Omar Jiménez Santiago* y *Luis H. Sánchez Caso*, abogados del peticionario; *Pedro A. Delgado Hernández* y *Luis Edwin González Ortiz*, del *Bufete O'Neill & Borges*, abogados de la Corporación de Desarrollo Hotelero; *Néstor Durán*, del *Bufete McConnell Valdés*, abogado de Development Management Group, Inc.

## SENTENCIA

El pasado 17 de junio de 1999 emitimos una resolución en la que ordenamos la paralización inmediata de las obras de demolición de los edificios que forman parte del complejo hotelero conocido como Condado Trío.[1] Una vez fue-

---

[1] En el caso de autos, la parte recurrida (la Corporación de Desarrollo Hotelero) no cuestiona la existencia de nuestra jurisdicción para revisar, vía *certiorari*, la negativa del Tribunal de Circuito de Apelaciones a ordenar la suspensión de la demolición.

Al respecto, este Tribunal tiene jurisdicción para revocar dicha determinación mientras el Tribunal de Circuito de Apelaciones resuelve los méritos del recurso ante su consideración. En dicho recurso se impugna la decisión de la Junta de Calidad Ambiental mediante la cual se aprobó la D.I.A.-Final. Ésta contiene el análisis de los efectos ambientales del proyecto propuesto en su totalidad, incluyendo la demolición. El permiso de la Administración de Reglamentos y Permisos que autoriza la demolición requiere la existencia de una D.I.A. que cumpla con todo lo requerido por nuestro ordenamiento ambiental. Es la existencia de una D.I.A. válida lo que, en esencia, permite el inicio de la demolición de las estructuras. Mediante la acción que

ron notificados de los términos de nuestra Resolución, la Corporación de Desarrollo Hotelero (en adelante CDH) compareció y nos informó que

[h]abida cuenta del reconocimiento que hace este Foro de la necesidad de atender este asunto con prioridad, CDH no efectuará obras de demolición de modo que se le dé curso prioritario a la resolución en los méritos de este asunto en el Tribunal de Circuito de Apelaciones. Moción Urgente en Cumplimiento de Orden, pág. 1.

Además nos informó que

CDH se ha comunicado con los representantes profesionales de la Administración de Reglamentos y Permisos y la Junta de Calidad Ambiental, y éstos le han informado que no tienen reparo a que se proceda según solicitado. Íd., pág. 2.

Por último, solicitaron que se le ordene al Tribunal de Circuito de Apelaciones "que adjudique en los méritos, con premura y prioridad, en un término de cinco (5) días, el caso que pende ante su consideración ...". Íd., pág. 2.

También compareció el desarrollador recurrido, Development Management Group, Inc. (en adelante DMG) y se allanó a nuestra orden:

Por consiguiente, en vista de que tanto este Tribunal como el Tribunal de Circuito han reconocido la prioridad y urgencia que reviste este caso, DMG estima prudente y razonable no oponerse a lo intimado por este Tribunal de expedir el auto de *certiorari* y devolver el caso al Tribunal de Circuito para que [este Tribunal] resuelva el recurso de revisión con la prioridad y urgencia que anticipó en su resolución de 18 de junio de 1999. Moción en Cumplimiento de Orden para Mostrar Causa, págs. 4–5.

En dicha resolución, el Tribunal de Circuito de Apelaciones concedió a las partes unos términos breves para someter los escritos correspondientes y dispuso que

---

hoy tomamos, evitamos que las actividades de demolición tornen académica la facultad del Tribunal de Circuito de Apelaciones para revisar las decisiones de la Junta de Calidad Ambiental.

[t]ranscurrida la fecha del 24 de junio dispuesta para los es-
critos suplementarios, se tendrá el recurso sometido para nues-
tra decisión, lo que se hará con la prioridad y urgencia que
amerita su naturaleza. Anejo 1 de la Moción en cumplimiento
de orden para mostrar causa, pág. 2.

Visto lo dispuesto por el Tribunal de Circuito de Apela-
ciones y acogidas las comparecencias de CDH y DMG como
un allanamiento a nuestra orden, *se expide el auto y se
dicta sentencia que ordena la paralización de la demolición
de los edificios del Condado Trío.*

Lo acordó el Tribunal y certifica la Secretaria del Tribu-
nal Supremo. El Juez Asociado Señor Fuster Berlingeri
concurrió y desea hacer constar que, en su criterio, la pa-
ralización *pendente lite* que hoy se ordena debe continuar
en vigor hasta que exista un dictamen judicial firme y
final. El Juez Asociado Señor Rebollo López emitió una opi-
nión disidente, a la cual se unió el Juez Asociado Señor
Corrada Del Río.

(*Fdo.*) Isabel Llompart Zeno
*Secretaria del Tribunal Supremo*

— O —

Opinión disidente emitida por el Juez Asociado Señor Re-
bollo López.

Disentimos por entender que este Tribunal *no* tiene ju-
risdicción para intervenir en el presente asunto. Principios
elementales de derecho administrativo y práctica apela-
tiva, los cuales nos obligan, así lo establecen.

Es claramente errónea, en consecuencia, la orden de pa-
ralización que este Tribunal emitiera el pasado 17 de junio
de 1999, la cual ha causado graves perjuicios al desarrolla-
dor del proyecto aquí en controversia; orden que la Mayo-
ría reitera mediante la Sentencia que emite en el día de
hoy.

# I

El drama judicial que presenta el recurso hoy ante nuestra consideración consta de varios capítulos, los cuales trataremos de sintetizar y explicar de la forma más sencilla posible. De entrada, tomamos conocimiento judicial de que el proceso de subasta en torno a la propiedad que nos ocupa generó mucha controversia. Entre los licitadores, por supuesto, estaba el Municipio de San Juan. Prácticamente, todos los licitadores proponían la alteración sustancial, por no decir un cambio total o demolición, de la estructura existente. Resultó vencedor en la referida subasta la Corporación de Desarrollo Hotelero; contándose, entre los perdedores, al Municipio de San Juan.

La génesis de la intervención judicial en el caso de autos fue una resolución de la *Junta de Calidad Ambiental* (J.C.A.) aprobando la Declaración de Impacto Ambiental final (D.I.A.-F.) presentada por la Administración de Reglamentos y Permisos (A.R.Pe.) para el propuesto proyecto Condado Beach Trío.(¹) Oportunamente, el Municipio de San Juan solicitó reconsideración, la cual fue denegada por la J.C.A. Inconforme, el Municipio de San Juan presentó un recurso de revisión judicial ante el Tribunal de Circuito de Apelaciones *en el cual, básicamente, cuestiona la D.I.A.-F. aprobada.*(²) Eventualmente, las otras partes comparecieron. No empece a la urgencia del reclamo, el recurso aún está pendiente de adjudicar.

Así las cosas, el Municipio de San Juan advino en conocimiento de que la Corporación de Desarrollo Hotelero había solicitado de A.R.Pe. los permisos que permitirían la demolición del complejo existente. Dicho de otra forma, ante A.R.Pe. comenzó *otro proceso administrativo distinto*, cuyo fin era la obtención de los permisos para demoler la

---

(¹) Caso Núm. DIA JCA 99-003 (A.R.Pe.).

(²) Véase, en específico, la pág. 9 de la Petición de *certiorari* presentada por el Municipio de San Juan ante esta Curia.

estructura existente. El 25 de abril de 1999, *A.R.Pe.* *aprobó los permisos de demolición.*

Ante la actuación de A.R.Pe., *dentro del término provisto por ley*, la representación legal del Municipio de San Juan solicitó intervención y reconsideración;[3] *solicitud que A.R.Pe. acogió, como veremos, fuera del término de quince (15) días que para ello provee nuestro ordenamiento jurídico.*

Procede que repitamos y enfaticemos que éste era un procedimiento administrativo distinto al que se encontraba pendiente de revisión ante el Tribunal de Circuito de Apelaciones, en el cual se estaba cuestionando la validez de la declaración de impacto ambiental final aprobada por la Junta de Calidad Ambiental.

## II

Huelga repetir que aquí hay *dos* (2) decisiones administrativas distintas emitidas por *dos* (2) agencias distintas. Las mismas versan sobre el mismo proyecto pero, en estricto rigor jurídico, *son procedimientos totalmente distintos y separados el uno del otro.*

No importa desde qué ángulo se escudriñe el asunto, la conclusión siempre es la misma: *este Tribunal no tiene jurisdicción para intervenir en el referido asunto.* Dicha falta de jurisdicción es *consecuencia directa* del hecho de que la reconsideración a la orden de demolición fue "acogida" por A.R.Pe. el 24 de mayo de 1999; esto es, *veinticuatro (24) días después de que fuera presentada.* En vista a esa situación, *sólo hay dos (2) escenarios posibles*, dependiendo de la determinación que se haga sobre si A.R.Pe. *perdió* jurisdicción sobre el asunto o si, por el contrario, *mantuvo* la misma. Los exponemos por separado.

En *primer* lugar, no hay duda de que A.R.Pe. acogió fuera de término la solicitud de reconsideración del Muni-

---

[3] Apéndice del peticionario, pág. 1817.

cipio de San Juan; sólo tenía quince (15) días para hacerlo. Al no actuar la referida agencia en torno a la misma, dentro de dicho término, se entiende que la rechazó de plano. Siendo ello así, la única alternativa jurídica del Municipio, *bajo este primer escenario*, era acudir en revisión de esta determinación administrativa ante el Tribunal de Circuito de Apelaciones. El Municipio de San Juan no lo hizo. En lugar de radicar un recurso de revisión, planteó el asunto —*de forma colateral, atropellada e impropia*— mediante una mal llamada Moción en Auxilio de Jurisdicción en el recurso que ya anteriormente había radicado ante el Tribunal de Circuito de Apelaciones, en el cual cuestionaba la aprobación de la D.I.A.-F. por parte de la J.C.A., lo cual es improcedente en derecho.

Nótese, repetimos, que lo que estaba ante la consideración del Circuito en ese recurso *no* era el permiso expedido para la demolición, el cual le corresponde a A.R.Pe., sino la suficiencia, o no, de la D.I.A.-F., asunto que le compete a la J.C.A. En matemática sencilla, la controversia generada por la decisión de A.R.Pe. autorizando la demolición *no* tiene nada que ver, desde un punto de vista jurídico, con el recurso de revisión que está pendiente ante el foro apelativo intermedio, el cual propiamente versa sobre el desarrollo propuesto.

La táctica utilizada por la representación legal del Municipio de San Juan, cuidadosamente confeccionada, ha causado que la mayoría de los miembros de este Tribunal no se percaten del punto. Si concluyéramos que A.R.Pe. estaba impedida de considerar la moción de reconsideración, por no haberlo hecho en los quince (15) días que provee la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), forzosa resulta la conclusión de que la determinación de demolición *advino final y firme*.(4) Esto, pues el Municipio de San

---

(4) Véase la Opinión de conformidad, concurrente y disidente del Juez Asociado Señor Hernández Denton, a la cual se unió la Juez Asociada Señora Naveira de

Juan dejó transcurrir el término de treinta (30) días para solicitar la revisión judicial de dicha determinación administrativa. *Por ello, este Tribunal no tendría jurisdicción para revisar la orden de demolición emitida por A.R.Pᴇ.*

Tampoco, por supuesto, podía el Municipio de San Juan sustituir el recurso de revisión judicial con una moción en auxilio de jurisdicción. Convalidar esa situación es algo realmente inaudito. Esto es, de acogerse como tal, ello constituiría una aberración jurídica y, de todas formas, la misma fue presentada cuando ya había transcurrido en exceso del término de treinta (30) días, contado el mismo desde el momento en que fue notificada la decisión emitida por A.R.Pᴇ.

El *segundo escenario,* o la *otra* ruta adjudicativa viable, sería determinar que aun cuando A.R.Pᴇ. acogió la reconsideración a los veinticuatro (24) días de solicitada, podía, al así actuar, retener su jurisdicción sobre el asunto *ya que la acogió antes que expirara el término de treinta (30) días para solicitar la revisión judicial.* Dicha interpretación sería cónsona con la que se ha hecho de la disposición correspondiente de las Reglas de Procedimiento Civil.(⁵)

Así, si entendiéramos que la reconsideración fue acogida en tiempo —*por haberse hecho antes que expirara el término de revisión judicial*— la agencia preservaría su jurisdicción, cuando menos, por noventa (90) días adicionales en los cuales debe dilucidar la reconsideración acogida, comenzando a decursar nuevamente el plazo para acudir en revisión judicial si la agencia no actúa en dicho término. Sec. 3.15 de la L.P.A.U., 3 L.P.R.A. sec. 2165.

El *problema u obstáculo* con este segundo "escenario" es

---

Rodón, en *Misión Ind. P.R. v. J.P.,* 146 D.P.R, 64, 203–204 (1998). *Allí, se calificó como "ultra vires" el que una agencia acoja una solicitud de reconsideración luego de los quince (15) días.*

(⁵) Véanse: *Lagares v. E.L.A.,* 144 D.P.R. 601 (1997); *Pagán v. Alcalde Mun. de Cataño,* 143 D.P.R. 314 (1997); *Pueblo v. Mojica Cruz,* 115 D.P.R. 569 (1984); *Suárez v. Flamingo Homes, Inc.,* 102 D.P.R. 664 (1974); *Torres Torres v. Tribunal Superior,* 101 D.P.R. 277 (1973).

que si ello es así, *ni* el Tribunal de Circuito de Apelaciones *ni* este Tribunal tendrían jurisdicción sobre el asunto *por cuanto* el planteamiento que hace el Municipio de San Juan *sería prematuro* por estar el mismo todavía ante la consideración de A.R.Pe. *En conclusión, no tenemos jurisdicción bajo cualesquiera de los dos (2) escenarios posibles.*

Claro está, si la solución jurídica correcta fuera que, al acoger la reconsideración a los veinticuatro (24) días, A.R.Pe. retuvo su jurisdicción sobre el aspecto de la demolición, el curso de acción a seguir por el Municipio era acudir ante la referida agencia para que, al amparo de los Arts. 25 y 26 de la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. secs. 71x y 71y, A.R.Pe. tomara las medidas necesarias para detener la demolición mientras resolvía la moción de reconsideración que había acogido.

Claro está, al amparo de la decisión de este Tribunal en *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223 (1994), la facultad de las agencias administrativas para acudir a los tribunales no es exclusiva. Por ello, el Municipio de San Juan podría haber instado el recurso que hubiere estimado atinado, por ejemplo, un interdicto. Esto último, por supuesto, *ante el Tribunal de Primera Instancia con competencia para ello*, pues, en todo caso, sería necesario recibir prueba para adjudicar el asunto. Como es sabido, los foros apelativos, de ordinario, no están en posición de hacer tales determinaciones.[6]

Lo que *no* podía hacer el Municipio de San Juan es, precisamente, lo que hizo —esto es, acudir directamente

---

[6] Bajo la primera ruta decisional disponible, si la Administración de Reglamentos y Permisos no podía acoger la moción de reconsideración, por haber transcurrido los quince (15) días, el Municipio de San Juan tampoco podía acudir al Tribunal de Circuito de Apelaciones mediante una moción en auxilio de jurisdicción. Esto pues, como explicáramos antes, lo jurídicamente procedente era presentar otro recurso de revisión. Así pues, la única alternativa viable era acudir ante la propia agencia para que ésta emitiera la orden correspondiente que estimare apropiada. Ello, *repetimos*, al amparo de los Arts. 25 y 26 de la Ley Orgánica de la Administración de Reglamentos y Permisos, 23 L.P.R.A. secs. 71x y 71y.

mediante una mal llamada Moción en Auxilio de Jurisdicción ante el Tribunal de Circuito de Apelaciones dentro del recurso que había radicado para revisar la decisión de la J.C.A.— *actuación que, lamentablemente para nuestro ordenamiento jurídico, una mayoría de los integrantes del Tribunal avala.*

Hemos resuelto que el planteamiento sobre carencia de jurisdicción es uno de índole privilegiado que puede hacerse, incluso, por primera vez a nivel apelativo;[7] que los tribunales deben ser *celosos guardianes* de su jurisdicción, al extremo de que, incluso ante la ausencia de señalamiento a esos efectos por las partes, el Tribunal viene en la obligación de levantarlo motu proprio. *Vázquez v. A.R.Pe.*, 128 D.P.R. 513 (1991); *Martínez v. Junta de Planificación*, 109 D.P.R. 839, 842 (1980); *Soc. de Gananciales v. A.F.F.*, 108 D.P.R. 644, 645 (1979).[8]

Siendo ello así, y atendidos los hechos particulares del presente caso, este Tribunal viene en la ineludible obligación de dictar Sentencia desestimando el recurso radicado por el Municipio de San Juan, por carecer de jurisdicción para considerarlo, y dejar sin efecto la orden de paralización que emitiera el pasado 17 de junio de 1999; orden que es producto de una evidente actuación errónea y *ultra vires* de parte de este Tribunal. La Mayoría, inexplicablemente, se niega a así hacerlo.[9]

Es por ello que disentimos.

---

[7] J.A. Cuevas Segarra, *Práctica procesal puertorriqueña: procedimiento civil*, San Juan, Pubs. J.T.S., 1979, Cap. II, pág. 10 y ss.

[8] Norma jurisprudencial que, naturalmente, dispone del, y hace irrelevante el, señalamiento de la Mayoría a los efectos de que la parte recurrida no ha cuestionado la jurisdicción del Tribunal.

[9] El razonamiento de la Mayoría a los efectos de que tanto este Tribunal como el Tribunal de Circuito de Apelaciones tienen jurisdicción para entender en el presente asunto no pasa de ser un pobre intento de tratar de justificar lo injustificable.

Esta constituye la primera ocasión en que este Tribunal —*mediante la emisión de una Sentencia y relegando el razonamiento principal del caso a una nota al calce*— resuelve que una parte puede "acumular", en un solo recurso, la revisión de *dos* (2) decisiones administrativas, emitidas las mismas por *dos* (2) agencias distintas, en *dos* (2) diferentes fechas, las cuales decisiones versan sobre *dos* (2) asuntos distintos.