EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Rafael Benítez Nieves<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado; Honorable Elinar Ramos, Secretario del Departamento de Corrección y Rehabilitación; Junta de Libertad Bajo Palabra, Superintendente Institución Correccional Bayamón 705<br><br>Peticionarios | Certiorari<br><br>2019 TSPR 117<br><br>202 DPR _____ |

Número del Caso: CC-2016-1047

Fecha: 21 de junio de 2019

Tribunal de Apelaciones:

    Región Judicial de Bayamón y Aibonito – Panel VI

Oficina del Procurador General:

    Lcda. Tanaira Padilla Rodríguez
    Subprocuradora General

    Lcda. Karla Pacheco Álvarez
    Subprocuradora General

    Lcdo. Zarel Soto Acabá
    Procurador General Auxiliar

    Lcda. Rosa Elena Pérez Agosto
    Procuradora General Auxiliar

Abogado de la parte recurrida
Sociedad para Asistencia Legal:

    Lcdo. Luis A. Zambrana González

Materia: Derecho Administrativo – El término para emitir una resolución sobre revocación del privilegio de libertad bajo palabra es directo. El auto de habeas corpus no es el recurso adecuado para compeler a la Junta de Liberta Bajo Palabra a actuar si transcurrió el término para emitir una determinación final sobre revocación de probatoria

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael Benítez Nieves

   Recurrido

    v.

Estado Libre Asociado; Honorable Elinar Ramos, Secretario del Departamento de Corrección y Rehabilitación; Junta de Libertad Bajo Palabra, Superintendente Institución Correccional Bayamón 705

   Peticionarios

CC-2016-1047

Opinión del Tribunal emitida por el Juez Asociado señor MARTÍNEZ TORRES.

En San Juan, Puerto Rico, a 21 de junio de 2019.

Nos corresponde determinar si el término para emitir una resolución sobre revocación del privilegio de libertad bajo palabra es jurisdiccional o directivo, ello al amparo de lo dispuesto en la Ley de Libertad Bajo Palabra, infra, y el Reglamento Núm. 7799 de la Junta de Libertad Bajo Palabra. Resolvemos que ese término es directivo. Por otro lado, debemos determinar si en este caso el Tribunal de Apelaciones erró al confirmar la sentencia del Tribunal de Primera Instancia mediante la cual ese foro proveyó ha lugar a una petición de hábeas corpus. Resolvemos que erró.

I

El Sr. Rafael Benítez Nieves se encuentra cumpliendo una sentencia de 44 años por cometer los delitos de Robo, Tentativa de Robo y Fuga, y por violación a la Ley de Armas de Puerto Rico, Ley Núm. 404 de 11 de septiembre de 2000, 25 LPRA sec. 455 et seq. El 30 de septiembre de 2015, la Junta de Libertad Bajo Palabra (en adelante, Junta) le concedió el privilegio de libertad bajo palabra.

El 6 de noviembre de 2015, el señor Benítez Nieves recibió un Informe de Querella del Programa de la Comunidad de Caguas que señala que infringió el mandato de libertad bajo palabra. A raíz de ese informe, ese mismo día el Tribunal de Primera Instancia emitió una orden de arresto contra el señor Benítez Nieves. Este fue arrestado e ingresado en el Centro de Ingresos, Diagnóstico y Clasificación de Bayamón 705.

El 12 de diciembre de 2015, se celebró la vista sumaria inicial, como parte del proceso de revocación del privilegio de libertad bajo palabra. La Junta encontró causa probable contra el señor Benítez Nieves por violación de varias condiciones del mandato de libertad bajo palabra. El 17 de diciembre de 2015, la Junta celebró la vista final de revocación.

El 22 de febrero de 2016, el señor Benítez Nieves presentó ante la Junta una "Moción urgente solicitando desestimación de querella y excarcelación". Alegó que la Junta carecía de jurisdicción para continuar con el proceso de revocación del privilegio de libertad bajo palabra. Se basó en que la Sec. 13.3(D) del Art. XIII del Reglamento Procesal Núm. 7799, dispone

que la Junta debe emitir una determinación final del proceso de revocación en el término de 30 días contados a partir de la fecha en que se celebró la vista final. Señaló que en este caso la Junta no había emitido la determinación final, a pesar de que ya habían trascurrido los 30 días establecidos en el reglamento. Indicó que la Sec. 13.3(E)(4) del Art. XIII del Reglamento Núm. 7799, dispone que "[l]a determinación del proceso de revocación no podrá ser pospuesta". Alegó que ese artículo le quita discreción a la junta para posponer su determinación, pues convierte el término para emitir la resolución en uno jurisdiccional. Por lo anterior, solicitó que se ordenara su excarcelación para reintegrarse a la libre comunidad o, en la alternativa, su reingreso al programa de Hogar CREA, Inc. La Junta no se expresó en cuanto a esa moción.

El 11 de marzo de 2016, el señor Benítez Nieves presentó una solicitud de hábeas corpus ante el Tribunal de Primera Instancia. Alegó que habían transcurrido más de 83 días desde la vista final y la Junta aún no había emitido su determinación. Reiteró los argumentos presentados en su moción del 22 de febrero de 2016.

El 17 de marzo de 2016, el Tribunal de Primera Instancia celebró una vista de hábeas corpus. Durante esa vista, la Junta informó al foro primario que el 1 de marzo de 2016 emitió una resolución mediante la cual le revocó el privilegio de libertad bajo palabra al señor Benítez Nieves. Indicó que el 11 de marzo de 2016 el señor Benítez Nieves la recibió por correo. El

magistrado que presidió la vista indicó que recibiría la resolución pero que no la tomaría en consideración para emitir el dictamen. Solicitó que la resolución se colocara en sobre sellado.

El 11 de abril de 2016, el Tribunal de Primera Instancia notificó una sentencia mediante la cual proveyó ha lugar a la petición de hábeas corpus y ordenó la excarcelación del señor Benítez Nieves, sujeto a su reingreso a tratamiento interno en el programa de Hogar CREA, Inc. El foro primario concluyó que el término de 30 días para emitir la resolución sobre la revocación del privilegio no puede ser directivo, ya que la Sec. 13.3(E)(4) del Reglamento Núm. 7799, dispone que ese término no puede posponerse. Razonó que el término es jurisdiccional y que la Junta está obligada a actuar dentro de este.

En desacuerdo, la Junta presentó un recurso de apelación ante el Tribunal de Apelaciones. Señaló que el Tribunal de Primera Instancia erró al interpretar que el término en controversia es jurisdiccional. Indicó que ese foro también erró al determinar que la Junta perdió jurisdicción para emitir la resolución sobre revocación del privilegio y al ordenar la excarcelación del señor Benítez Nieves.

El señor Benítez Nieves presentó su oposición. Reiteró que el término de 30 días debía ser considerado jurisdiccional y no directivo.

El 1 de julio de 2016, el Tribunal de Apelaciones notificó una sentencia que confirmó en todos sus extremos la sentencia

del foro primario. Específicamente, concluyó que la Junta carecía de jurisdicción para continuar con el proceso de revocación del privilegio y procedía la desestimación de la querella sobre violación de condiciones que se presentó contra el señor Benítez Nieves. Resolvió que el señor Benítez Nieves estaba privado de su libertad ilegalmente y que procedía su excarcelación inmediata para que fuera reingresado al programa de Hogar CREA, Inc.

Inconforme, la Junta presentó una petición de certiorari ante nos. Señaló que el Tribunal de Apelaciones erró al interpretar que es jurisdiccional el término provisto en el Reglamento Núm. 7799, para emitir la determinación final en torno a la revocación del privilegio de libertad bajo palabra. Por otro lado, indicó que el Tribunal de Apelaciones erró al determinar que la Junta perdió jurisdicción para emitir la resolución de revocación del privilegio y, en consecuencia, al decretar la excarcelación del señor Benítez Nieves. El señor Benítez Nieves se opuso. Reiteró los argumentos que presentó ante los foros inferiores. Con la comparecencia de ambas partes, procedemos a resolver.

## II

La Junta de Libertad Bajo Palabra fue creada mediante la aprobación de la Ley Núm. 118 de 22 de julio de 1974, 4 LPRA sec. 1501 et seq. Ese organismo tiene la autoridad de conceder a cualquier persona recluida en una institución correccional de

Puerto Rico el privilegio de cumplir la última parte de su condena en libertad bajo palabra.

Al conceder el privilegio, la Junta puede imponer las condiciones que estime necesarias. Art. 3, Ley Núm. 118, supra, 4 LPRA sec. 1503. Así, el liberado bajo palabra tiene una libertad cualificada. Maldonado Elías v. González Rivera, 118 DPR 260, 266 (1987). Esas condiciones restringen las actividades del liberado más allá de las restricciones comunes que se le imponen por ley a cada ciudadano. ("*These conditions restrict their activities substantially beyond the ordinary restrictions imposed by law on an individual citizen.*") Morrissey v. Brewer, 408 US 471, 479 (1972) (Traducción nuestra.)

La Junta también tiene la autoridad para revocar el privilegio de libertad bajo palabra. Previo a revocar el privilegio, el Estado debe concederle al liberado unas garantías procesales. Maldonado Elías v. González Rivera, supra. El Art. 5 de la Ley Núm. 118, supra, establece el procedimiento de revocación que debe seguir la Junta. Ese artículo dispone que la Junta o cualquiera de sus miembros están autorizados, previa investigación preliminar de la Administración de Corrección que revele infracción de alguna condición del privilegio, para ordenar el arresto y la reclusión de cualquier liberado para que sea confinado en la institución que designe el Administrador de Corrección. En la orden de arresto se notificará al liberado de la alegada infracción, de sus derechos y de que se celebrará una vista sumaria inicial. Art. 5, Ley Núm. 118, supra, 4 LPRA sec.

1505. El liberado permanecerá recluido mientras la Junta actúa sobre cualquier imputación de violación de alguna condición de la libertad bajo palabra. Íd.

El Art. 5 de la Ley Núm. 118, supra, también dispone que la Junta debe celebrar la vista sumaria inicial no más tarde de 72 horas del arresto y reclusión. Esa vista tiene el propósito de dilucidar si existe causa probable para que el liberado continúe recluido hasta que la Junta emita la resolución final. La Junta debe celebrar la vista final para determinar si procede la revocación de la libertad bajo palabra dentro de los 60 días a partir de la fecha del arresto del liberado. Art. 5, Ley Núm. 118, supra, 4 LPRA sec. 1505. La decisión de la Junta, formulada a base de la preponderancia de la prueba, se hará por escrito y contendrá las determinaciones de hecho, la prueba en que la decisión se basó y las razones que justifican la revocación. Íd. La Ley Núm. 118, supra, no establece un término para que la Junta emita la determinación final en el proceso de revocación.

El legislador hizo constar en el Art. 5 de la Ley Núm. 118, supra, que la Junta tiene la autoridad de promulgar las reglas y reglamentos que crea convenientes para el mejor cumplimiento de las disposiciones de ese artículo. En virtud de ello, esa agencia aprobó el Reglamento Procesal de la Junta de Libertad Bajo Palabra, Reglamento Núm. 7799 de 19 de febrero de 2010.

A pesar de que la Ley Núm. 118, supra, no establece un término para que la Junta emita la determinación final sobre revocación del privilegio de libertad bajo palabra, el

Reglamento Núm. 7799 dispone 30 días para ello. Además, ese reglamento establece que la determinación del proceso de revocación no puede ser pospuesta. En lo pertinente, los incisos (D) y (E)(4) de la Sec. 13.3 del Art. XIII del Reglamento Núm. 7799, disponen lo siguiente:

> **D. La Junta emitirá su determinación final, mediante la correspondiente resolución, en el término de treinta (30) días calendario, contados a partir de la fecha en que se celebró la vista.**
>
> E. La Junta podrá posponer su determinación en los casos considerados para la libertad bajo palabra conforme a lo siguiente:
>
> 1. …
> 2. …
> 3. …
> **4. La determinación del proceso de revocación no podrá ser pospuesta.** (Énfasis nuestro.)

En este caso, el Tribunal de Apelaciones concluyó que la frase "no podrá ser pospuesta" le atribuye carácter jurisdiccional al término de 30 días. Dispuso que la Junta perdió jurisdicción sobre el proceso de revocación del privilegio de libertad bajo palabra del señor Benítez Nieves al no emitir su determinación final dentro del término reglamentario. A base de ello, resolvió que el Tribunal de Primera Instancia actuó correctamente al proveer ha lugar a la petición de hábeas corpus que presentó el señor Benítez Nieves.

Nos corresponde determinar si el Tribunal de Apelaciones erró al resolver que el término de 30 días que le impone el Reglamento Núm. 7799 a la Junta para emitir la decisión sobre revocación es jurisdiccional y, por ello, la Junta perdió jurisdicción al no emitir su determinación final dentro del

término. Por otro lado, debemos resolver si el foro apelativo intermedió erró al determinar que el foro primario actuó correctamente al expedir el auto de hábeas corpus para excarcelar al señor Benítez Nieves.

III

La autoridad de una agencia administrativa para aprobar reglas o reglamentos surge directamente de su ley habilitadora. D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, Ed. Forum, 2013, págs. 121-123. El estatuto orgánico o ley habilitadora de una agencia es lo que "define y delimita" la extensión de la jurisdicción de la agencia. Íd., pág. 161.

Las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan. Torres v. Junta Ingenieros, 161 DPR 696, 712 (2004); T-JAC, Inc. v. Caguas Centrum Limited, 148 DPR 70, 81 (1999). Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla y aplicarla en la manera en que está concebida, sirviendo siempre a los propósitos, los objetivos y la política pública que la forjaron. Torres v. Junta Ingenieros, supra, pág. 713; T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 81. Las agencias, por más poderes que se les hayan delegado, no pueden actuar de manera arbitraria, ni al cambiar sus reglamentos, ni al establecer reglas nuevas. Asoc. Fcias. Com. v. Depto. de Salud, 156 DPR 105, 136 (2002). Tampoco pueden actuar arbitraria o

caprichosamente al aplicar sus reglamentos a casos particulares. Íd.

Al interpretar estatutos, hemos sido enfáticos en que cuando el legislador ha querido que un término para resolver un asunto sea fatal, lo establece expresamente en la ley. Pueblo v. Mojica Cruz, 115 DPR 569, 575 (1984). En vista de ello, cuando la ley no contiene una expresión a tales efectos, el término deberá entenderse como uno directivo. In re Godínez Morales, 161 DPR 219, 237 (2004).

El legislador no estableció un término para que la Junta emita la resolución sobre revocación del privilegio de libertad bajo palabra. La Ley Núm. 118, supra, tampoco dispone que la Junta debe fijar un término para emitir la determinación final. Por lo tanto, aunque la Junta sí puede, en virtud de los poderes delegados para adoptar reglamentos, fijar un término para emitir la determinación final en el proceso de revocación, ese término no puede ser jurisdiccional. De lo contrario, la agencia estaría negándose a ejercer la autoridad que la ley le concedió.

Resulta forzoso concluir entonces que el término de 30 días que establece el Reglamento Núm. 7799 para emitir la determinación final sobre revocación es directivo. Determinar que el término para emitir la resolución de revocación es jurisdiccional implicaría añadir a la Ley Núm. 118, supra, elementos que no contiene y que el legislador no contempló al momento de aprobar ese estatuto.

El reglamento procesal de la Junta no puede limitar la jurisdicción que le concede su ley habilitadora. Por lo tanto, aun si tuviéramos los elementos para concluir que la Junta tuvo la intención de establecer un término jurisdiccional para emitir la resolución sobre revocación, tendríamos que invalidar el reglamento en cuanto al carácter jurisdiccional de ese término, pues esa disposición trascendería la autoridad delegada por la Ley Núm. 118, supra, a la Junta. Es decir, en ese escenario el resultado sería el mismo: concluiríamos que el término es directivo. Esto se debe a que es nulo el reglamento que esté en conflicto o en contra de la ley. Perfect Cleaning v. Cardiovascular, 162 DPR 745, 758-759 (2004). En resumen, el Tribunal de Apelaciones erró al resolver que el término es jurisdiccional.

IV

La Ley Núm. 118, supra, provee que la Junta perderá jurisdicción sobre el proceso de revocación solo si median ciertas circunstancias particulares. Esto es, si transcurren 150 días desde el arresto del liberado sin que la Junta celebre la vista final. En específico, la ley provee que, si la Junta no celebra la vista final dentro de 60 días del arresto, el liberado será excarcelado y, que "la alegada infracción a la libertad bajo palabra se considerará como no cometida si trascurridos 90 días desde la excarcelación del liberado la Junta no celebra la vista final y revoca la libertad bajo palabra". Art. 5, Ley Núm. 118, supra, 4 LPRA sec. 1505. Esto se

debe a que el debido proceso de ley exige que en el proceso de revocación del privilegio de libertad bajo palabra se salvaguarde el derecho del liberado a una vista en la que pueda confrontar la prueba en su contra y presentar evidencia a su favor. La jurisprudencia federal ha establecido la importancia de ese derecho en varias ocasiones.

En Morrissey v. Brewer, supra, el Tribunal Supremo de Estados Unidos resolvió que, aunque el proceso de revocación de probatoria no amerita que se salvaguarden todos los derechos que se garantizan al acusado en el proceso criminal, la libertad de un probando involucra valores significativos que caen dentro de la protección del debido proceso de ley de la Enmienda XIV de la Constitución de Estados Unidos. Emda. XIV, Const. EE.UU., LPRA, Tomo 1. En esa ocasión, el Tribunal indicó que esa protección requiere que previo a revocar el privilegio se celebre una vista informal que asegure que la alegada infracción está basada en hechos probados. Resolvió que esa vista de revocación debe celebrarse dentro de un término razonable luego de que el liberado es arrestado. Concluyó que un término de dos meses es razonable. Ese caso estableció que las garantías constitucionales aplicables en el proceso de revocación de libertad bajo palabra son: 1) una vista preliminar para determinar si hay causa probable para creer que el liberado ha violado las condiciones de la libertad bajo palabra, y 2) una vista final antes de la decisión definitiva sobre si la libertad bajo palabra será revocada. Estos requisitos han sido

incorporados a nuestra jurisprudencia. Véanse, Maldonado Elías v. González Rivera, supra, pág. 265, y Martínez Torres v. Amaro Pérez, 116 DPR 717, 725 (1985). Cabe señalar que, en Martínez Torres v. Amaro Pérez, supra, advertimos que no es necesario celebrar la vista preliminar cuando en el trámite de solicitud de revocación no se arresta ni encarcela al probando. Véase, Moody v. Daggett, 429 US 78 (1976).

En Moody v. Daggett, supra, el foro federal resolvió, en lo pertinente, que no debe prolongarse el retraso previo a la celebración de la vista final de revocación, pues si se permitiera un retraso indefinido, se derrotarían las garantías procesales reconocidas en Morrisey v. Brewer, supra, que aseguran al liberado una oportunidad justa para presentar hechos que derroten o resten validez a las alegaciones del gobierno. Moody v. Daggett, supra, pág. 283.

Por otro lado, en United States v. Throneburg, 87 F.3d 851 (6to Cir. 1996), el Tribunal Federal de Apelaciones para el Sexto Circuito resolvió que la protección del debido proceso de ley aplica solo cuando la demora previa a la celebración de la vista final le causó perjuicio al liberado en cuanto a su habilidad para refutar la validez de la revocación del privilegio.

El señor Benítez Nieves fue arrestado por alegada violación a la libertad bajo palabra el 6 de noviembre de 2015 y la Junta celebró la vista final transcurridos 41 días desde el arresto, el 17 de diciembre de 2015. No se violó su debido proceso de

ley, pues la vista final se celebró dentro del término que establece la Ley Núm. 118, supra. Así, se satisficieron las consideraciones de debido proceso de ley que ha reconocido la jurisprudencia en este tipo de proceso.

Si bien es cierto que la Junta emitió la resolución transcurridos 83 días desde la celebración de la vista final, esa determinación es válida. El retraso ocurrió luego de que la Junta celebró la vista final. No se menoscabó el debido proceso de ley del señor Benítez Nieves, pues se garantizó su derecho de ser oído y presentar evidencia para cuestionar la validez de la revocación de manera adecuada y oportuna.

Lo anterior, unido al hecho de que el término para emitir la determinación final sobre revocación no es jurisdiccional, demuestra fehacientemente que en este caso no ocurrió ningún suceso que acarreara que la Junta perdiera jurisdicción sobre el proceso de revocación. Por lo tanto, el Tribunal de Apelaciones actuó incorrectamente al confirmar la sentencia del foro primario en cuanto a que la Junta perdió jurisdicción sobre el proceso de revocación del señor Benítez Nieves. Nunca hemos contemplado que el incumplimiento del término que la agencia tiene para resolver le prive de jurisdicción. Véase, e.g., J. Exam. Tec. Méd. v. Elías et al., 144 DPR 483 (1997).

El hecho de que hoy resolvemos que el término para emitir la resolución sobre revocación de libertad bajo palabra no es jurisdiccional, no implica que estemos de acuerdo con que la Junta adopte la práctica de ignorarlo. La Junta tiene el deber

de cumplir con el término directivo que se impuso mediante reglamento, excepto que medie justa causa. J. Exam. Tec. Méd. v. Elías et al., supra, págs. 494-495.

V

Resuelto lo anterior, solo resta determinar si el Tribunal de Apelaciones erró al dictaminar que el Tribunal de Primera Instancia actuó correctamente al expedir el auto de hábeas corpus para excarcelar al señor Benítez Nieves.

El 17 de marzo de 2016, el Tribunal de Primera Instancia celebró una vista de hábeas corpus. El magistrado que presidió la vista se negó a admitir la resolución del 1 de marzo de 2016 mediante la cual se le revocó el privilegio de libertad bajo palabra al señor Benítez Nieves. Posteriormente, emitió una sentencia proveyendo ha lugar a la petición de hábeas corpus. El Tribunal de Apelaciones confirmó esa sentencia. El foro apelativo intermedio erró al resolver de esa manera.

El auto de hábeas corpus es un recurso extraordinario de naturaleza civil mediante el cual una persona que está privada ilegalmente de su libertad solicita de la autoridad judicial competente que investigue la causa de su detención. Quiles v. Del Valle, 167 DPR 458, 466 (2006). Este no es el recurso adecuado para compeler a la Junta a actuar en los casos en los que ha transcurrido el término sin que ese organismo haya emitido una determinación final sobre revocación de probatoria. La parte afectada por la inobservancia puede presentar una solicitud de desestimación ante la Junta o utilizar el recurso

extraordinario de mandamus para hacer que la agencia cumpla con el deber que se autoimpuso en su reglamento. U.P.R. Aguadilla v. Lorenzo Hernández, 184 DPR 1001, 1010 (2012); Lab. Inst. Med. Ava. v. Lab. C. Borínquen, 149 DPR 121, 136 (1999).

La Junta no se expresó en cuanto a la moción de desestimación que presentó el señor Benítez Nieves el 22 de febrero de 2016. En lugar de ello, emitió la resolución sobre revocación el 1 de marzo de 2016 y la notificó al señor Benítez Nieves el mismo día en que este presentó su petición de hábeas corpus ante el Tribunal de Primera Instancia. Luego de la notificación, los recursos que tenía disponible el señor Benítez Nieves eran aquellos dirigidos a revisar la determinación sobre revocación; la solicitud de reconsideración ante la Junta y el recurso de revisión ante el Tribunal de Apelaciones. Véase Reglamento 7799, Art. XIV secs. 14.1 y 14.2. No obstante, este nunca cuestionó la validez de la resolución sobre revocación. Más bien, recurrió ante el foro erróneo mediante un recurso extraordinario en aras de impugnar la determinación de la Junta, soslayando así el trámite administrativo.

Para la fecha en que se celebró la vista de hábeas corpus, el señor Benítez Nieves estaba bajo la custodia del Estado debido a que su privilegio de libertad bajo palabra había sido revocado. En ese momento, este se encontraba cumpliendo la pena de reclusión que le fue impuesta cuando fue sentenciado. Ya que el señor Benítez Nieves estaba privado de su libertad legalmente, no procedía expedir el auto de hábeas corpus. El

Tribunal de Apelaciones debió revocar la determinación del tribunal inferior en cuanto a este asunto.

VI

En conclusión, el foro apelativo intermedio erró al resolver que el término de 30 días para emitir la resolución sobre revocación del privilegio de libertad bajo palabra que dispone el Reglamento Núm. 7799 es fatal y que, por eso, la Junta perdió jurisdicción sobre el proceso de revocación al no actuar dentro de ese término. Un reglamento de una agencia no puede limitar la jurisdicción que le concedió el legislador a través de la ley habilitadora. Por otro lado, el foro apelativo intermedio erró al resolver que el foro primario actuó correctamente al expedir el auto de hábeas corpus, pues el señor Benítez Nieves no estaba privado de su libertad ilegalmente.

Por ello, se emitirá Sentencia para revocar el dictamen del Tribunal de Apelaciones.


                         RAFAEL L. MARTÍNEZ TORRES
                              Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Rafael Benítez Nieves

     Recurrido

      v.

Estado Libre Asociado; Honorable Elinar Ramos, Secretario del Departamento de Corrección y Rehabilitación; Junta de Libertad Bajo Palabra, Superintendente Institución Correccional Bayamón 705

     Peticionarios

CC-2016-1047

SENTENCIA

En San Juan, Puerto Rico, a 21 de junio de 2019.

Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte de esta Sentencia, se revoca el dictamen del Tribunal de Apelaciones.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Estrella Martínez emitió una opinión disidente a la cual se unió la Jueza Presidenta Oronoz Rodríguez. La Juez Asociada señora Rodríguez Rodríguez y el Juez Asociado señor Colón Pérez no intervinieron.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Rafael Benítez Nieves<br><br>Recurrido<br><br>v.<br><br>Estado Libre Asociado; Honorable Elinar Ramos, Secretario del Departamento de Corrección; Junta de Libertad Bajo Palabra, Superintendente Institución Correccional Bayamón 705<br><br>Peticionarios | CC-2016-1047 | Certiorari |

Opinión disidente emitida por el Juez Asociado señor ESTRELLA MARTÍNEZ a la cual se une la Jueza Presidenta ORONOZ RODRÍGUEZ

San Juan, Puerto Rico, a 21 de junio de 2019.

La Asamblea Legislativa delegó válidamente en la Junta de Libertad Bajo Palabra (Junta) la facultad para reglamentar el proceso de revocación de libertad bajo palabra. A raíz de ello, la Junta, como toda otra agencia administrativa, tiene la obligación de cumplir con las normas que ésta dispuso en su propio reglamento. Máxime cuando la naturaleza del procedimiento de revocación de libertad bajo palabra requiere que la Junta salvaguarde garantías procesales en virtud del debido proceso de ley y establece unas consecuencias jurídicas compatibles con la Ley de la Junta de Libertad Bajo Palabra, infra. Por tales razones, respetuosamente disiento del dictamen mayoritario. Veamos.

**A.**

La libertad bajo palabra es una herramienta mediante la cual se le permite a una persona convicta de algún delito cumplir su sentencia, o parte de ella, fuera de una institución penal. Pueblo v. Negrón Caldero, 157 DPR 413, 417-418 (2002). De esta manera, la persona tiene la oportunidad de recuperar su libertad, sujeto al cumplimiento de ciertas restricciones. La libertad bajo palabra responde a la política pública plasmada en la Constitución de Puerto Rico que exige que se le provea el tratamiento adecuado a las personas que delinquen, en aras de promover su rehabilitación moral y social. Art. VI, Sec. 19, Const. ELA, Tomo 1. Cónsono con ello, hemos reconocido consecuentemente el carácter rehabilitador de este mecanismo, pues "tiene el propósito principal de ayudar a los confinados a reintegrarse a la sociedad en forma positiva tan pronto estén capacitados, sin tener que estar encarcelados por todo el término de la sentencia impuesta". Pueblo v. Negrón Caldero, supra, pág. 418; A.E.E. v. U.T.I.E.R., 153 DPR 623, 635- 636 (2001); Maldonado Elías v. González Rivera, 118 DPR 260, 275 (1987).

De hecho, desde tan temprano como el 1907, nuestro ordenamiento ha contado con un sistema de libertad bajo palabra. Véase, Ley fijando rebajas en las sentencias de los confinados y estableciendo el sistema de libertad bajo palabra en Puerto Rico, Ley de 14 de marzo de 1907, 1907 LPR 397-304. Actualmente, el mismo se rige por la

<u>Ley de la Junta de Libertad Bajo Palabra</u>, según enmendada, Ley Núm. 118 de 22 de julio de 1974, 4 LPRA secs. 1501-1516. Mediante este estatuto, la Asamblea Legislativa creó la Junta, la cual está compuesta por un presidente y cuatro miembros. En esencia, la Junta es la entidad responsable de conllevar los procedimientos de concesión del beneficio de la libertad bajo palabra y de la supervisión de las personas cumpliendo sus sentencias mediante este mecanismo.

De igual forma, en caso de que una persona liberada incumpla con las condiciones impuestas, la Junta está encargada de determinar si revoca o no la libertad bajo palabra. En esta encomienda, la Junta debe salvaguardar ciertas garantías procesales en virtud del debido proceso de ley. Esto, pues la Corte Suprema de los Estados Unidos (Corte Suprema Federal) resolvió que la mera catalogación de la libertad bajo palabra como un 'privilegio' no determina el alcance y la protección de los derechos constitucionales de las personas convictas sujetas a éste. <u>Morrissey v. Brewer</u>, 408 US 471, 481 (1972). A raíz de ello, hubo un desarrollo jurisprudencial mediante el cual se "redu[jo] en gran medida la distinción entre 'derecho' y 'privilegio' con miras a reconocer en sabia y justa praxis judicial los derechos procesales relativos que asisten a un probando que ha comenzado a disfrutar una libertad parcial". <u>Martínez Torres v. Amaro Pérez</u>, 116 DPR 717, 722-723 (1985). Por tal razón, tanto la

Corte Suprema Federal como el Tribunal Supremo de Puerto Rico han reconocido expresamente que la persona que cumple una sentencia mediante el mecanismo de libertad bajo palabra tiene un interés protegido constitucionalmente de conservar su libertad. Morrissey v. Brewer, supra, pág. 482; Maldonado Elías v. González Rivera, supra, pág. 276; Martínez Torres v. Amaro Pérez, supra, pág. 727.

En consecuencia, el Estado tiene que garantizar ciertas protecciones procesales a la persona liberada durante el procedimiento de revocación de libertad bajo palabra. En Morrissey v. Brewer, supra, la Corte Suprema Federal particularizó algunas de estas garantías. A esos efectos, el Estado debe celebrar una vista preliminar para determinar si hay causa probable para entender que la persona liberada ha incumplido con las condiciones de la probatoria. Íd., pág. 485. Asimismo, debe proveer una vista final, con el propósito de determinar si procede o no la revocación de los beneficios de la probatoria. Íd., págs. 487-488. Además, especificó que la persona liberada tiene derecho a: (1) notificación escrita de las alegadas violaciones a las condiciones de la probatoria; (2) acceso a la prueba en su contra; (3) oportunidad de ser oído y de presentar evidencia a su favor; (4) confrontar y contrainterrogar los testigos en su contra (salvo cuando el juzgador examinador determine lo contrario en circunstancias excepcionales); (5) un juzgador neutral e

independiente, y (6) determinaciones escritas y fundamentadas en torno a la revocación. Íd., págs. 488-489. No obstante, la Corte Suprema de los Estados Unidos expresó que estas garantías no son taxativas, por lo que les corresponde a los estados reglamentar y codificar el procedimiento de revocación de una probatoria. Íd., pág. 488.

**B.**

El Artículo 5 de la Ley Núm. 118-1974, supra, provee un andamiaje que regula, entre otros extremos, el procedimiento de revocación de libertad bajo palabra. 4 LPRA sec. 1505. En el mismo, la Asamblea Legislativa incorporó las garantías dispuestas en Morrissey v. Brewer, a saber, exigir una notificación escrita de las alegadas infracciones, la celebración de una vista sumaria inicial y una vista final, una determinación final escrita, entre otras. Esto, pues la Asamblea Legislativa ha hecho constar la obligatoriedad y el interés de **"establecer un procedimiento [de revocación de la libertad bajo palabra] que cumpla a cabalidad con las normas constitucionales del debido proceso de ley"**. (Énfasis suplido). Exposición de motivos, Ley Núm. 2 de 26 de febrero de 1987, 1987 LPR 8.

A su vez, mediante el referido estatuto, la Asamblea Legislativa delegó en la Junta la facultad de reglamentar la ejecución del procedimiento de revocación de libertad bajo palabra. 4 LPRA sec. 1505. Como es sabido, la

delegación de poderes en una agencia administrativa se entenderá válida cuando la ley habilitadora establezca normas adecuadas, criterios o principios inteligibles que guíen la discreción y facultades del ente administrativo. Rodríguez v. Bco. Gub. De Fom. P.R., 151 DPR 383, 400 (2000). Estos principios o criterios deben responder a fines o intereses públicos. Íd. Por tanto, la Asamblea Legislativa delegó válidamente esta facultad a la Junta, al autorizarle a "promulgar . . . las reglas y procedimientos que crea convenientes para el **mejor cumplimiento** de lo dispuesto en esta sección". (Énfasis suplido). 4 LPRA sec. 1505.

### C.

En virtud de ello, la Junta ha reglamentado históricamente los procedimientos relacionados con la libertad bajo palabra. En esta encomienda, la Junta aprobó el Reglamento Núm. 7799, el cual provee que toda determinación de la Junta, tanto de concesión como de revocación de libertad bajo palabra, debe emitirse en un término de **treinta días** luego de la celebración de la vista final. Sección 13.3 (D), Reglamento Procesal, Reglamento Núm. 7799 de la Junta de Libertad bajo Palabra de 20 de enero de 2010.

Ahora bien, la Junta estableció una distinción importante en cuanto al referido término de treinta días. Particularmente, el Reglamento Núm. 7799 provee que la Junta podrá excederse del término de treinta días y

posponer su determinación final cuando tenga ante su consideración una solicitud de **concesión** de la libertad bajo palabra. Íd., Sección 13.3 (E) (1-3). Esta normativa es cónsona con reglamentos anteriores de la Junta, los cuales proveían expresamente la facultad discrecional de posponer las decisiones finales de conceder o no la libertad bajo palabra. Véase, Artículo XIV del Reglamento de la Junta de Libertad bajo Palabra, Reglamento Núm. 3570 de la Junta de Libertad bajo Palabra de 26 de agosto de 1987; Artículo 14 del Reglamento de la Junta de Libertad bajo Palabra, Núm. 6866 de la Junta de Libertad bajo Palabra de 25 de agosto de 2004.

Sin embargo, el Reglamento Núm. 7799 descarta discreción alguna para posponer las decisiones de la Junta sobre la **revocación** de la libertad bajo palabra. A esos efectos, el Reglamento provee que la "determinación del proceso de revocación **no** podrá ser pospuesta". (Énfasis suplido). Íd., sec. 13.3 (E) (4). Por tanto, la Junta se autoimpuso un término jurisdiccional para garantizar que, una vez se celebre una vista final de revocación, ésta tome una decisión al respecto en treinta días o menos. A pesar de que la Junta especificó esta norma por primera vez en el Reglamento Núm. 7799, los pasados reglamentos no disponían lo contrario. Es decir, éstos solo contemplaban una posposición de la determinación final de una concesión de la libertad bajo palabra, más no de una revocación de ésta.

La norma establecida por la Junta en el Reglamento Núm. 7799 es cónsona con el propósito de su ley habilitadora, y con el desarrollo jurisprudencial federal y estatal antes expuesto. Debido a que la persona que cumple su sentencia mediante libertad bajo palabra goza de un interés libertario, el procedimiento para revocar esa libertad condicionada requiere la protección de ciertas garantías en virtud del debido proceso de ley. Además, es menester destacar que, en ciertas circunstancias, el alegado incumplimiento con las condiciones de la libertad bajo palabra conlleva el arresto inmediato de la persona. Por tanto, hay personas que se encuentran detenidas y privadas de su libertad mientras esperan por una decisión final de la Junta. A esos efectos, el término jurisdiccional de treinta días impuesto mediante reglamentación constituye una garantía procesal que fomenta que la Junta actúe oportuna y efectivamente. Asimismo, evita dilaciones excesivas que podrían redundar en privaciones indefinidas de libertad.

Debido a lo anterior, la Junta está obligada a cumplir con el término expresamente provisto en el Reglamento Núm. 7799. Por imperativo del debido proceso de ley, la Junta, como toda otra agencia administrativa, tiene que cumplir con las normas reglamentarias que esta misma promulgó. Rivera Padilla et al. v. OAT, 189 DPR 315, 343 (2013). Una vez la Junta "definió los contornos de su acción a través de reglamentos debidamente

promulgados, le corresponde aplicarlos **celosamente**". (Énfasis suplido). <u>Torres Arzola v. Policía de P.R.</u>, 117 DPR 204, 211 (1986).

**D.**

A pesar de lo anteriormente expuesto, la Opinión mayoritaria sostiene que el término de treinta días para que la Junta emita una determinación de revocación de libertad bajo palabra es directivo, por lo que puede extenderse. Ello, pues interpreta que la Asamblea Legislativa no delegó en la Junta la facultad para establecer un término jurisdiccional al respecto. En consecuencia, valida el procedimiento de revocación de libertad bajo palabra del Sr. Rafael Benítez Nieves (señor Benítez Nieves), en el que la Junta se demoró **ochenta y siete días** en emitir una decisión final. Esto, mientras el señor Benítez Nieves se encontraba detenido y privado de su libertad.

Sin embargo, un examen de la legislación, la reglamentación y la jurisprudencia aplicable a la controversia ante nuestra consideración revelan que el término jurisdiccional dispuesto en el Reglamento Núm. 7799 es válido y legítimo. Máxime, cuando es cónsono con el propósito legislativo y las garantías constitucionales discutidas.

Como expusimos anteriormente, la Asamblea Legislativa delegó en la Junta la facultad de implantar las reglas y procedimientos que entendiera convenientes

para el mejor cumplimiento del procedimiento de revocación. 4 LPRA sec. 1505. En esta encomienda, la Junta impuso un término improrrogable de treinta días que le obliga a emitir una determinación rápida y ágil luego de una vista final de revocación. Dicha norma está revestida de un fin público, pues constituye una garantía que salvaguarda el debido proceso de ley que exige la naturaleza del procedimiento. Asimismo, el término jurisdiccional no contraviene de forma alguna la delegación de poderes que ejerció la Asamblea Legislativa. Al contrario, facilita y promulga las garantías procesales que ésta ha sido enfática en querer proteger.

Además, la Junta está obligada a cumplir con las normas que ésta promulgó. Los reglamentos implantados por la Junta consecuentemente han contemplado una posposición de sus decisiones cuando tengan ante su consideración una solicitud de concesión de libertad bajo palabra, más nunca ha gozado de esa discreción en los procedimientos de revocación. Adviértase que la Asamblea Legislativa, con pleno conocimiento de esa línea de reglamentación, ha validado esa dicotomía y no ha aprobado legislación en contrario. En consecuencia, la Junta no tiene, ni debe tener, mano libre para dilatar y posponer indefinidamente los procedimientos de revocación. Lo contrario es en claro detrimento del debido proceso de ley que cobija a

las personas que cumplen sus sentencias mediante la libertad bajo palabra.

Por último, es menester destacar que incluso bajo la postura recogida en la Opinión mayoritaria de que el término de treinta días es de cumplimiento estricto, la Junta no presentó justa causa para resolver fuera del término. Las justificaciones presentadas por la Oficina del Procurador General se limitaron a impugnar la naturaleza del término en controversia, más no proveyó fundamento alguno para justificar el cumplimiento tardío de la Junta. Nótese que nos enfrentamos ante prácticamente una triplicación del término expresamente provisto en la reglamentación que nos ocupa.

Debido a que estamos ante una regulación del proceso de revocación que es cónsona con el propósito legislativo, el poder delegado a la agencia y las garantías constitucionales discutidas, respetuosamente disiento. En consecuencia, hubiese confirmado el dictamen del Tribunal de Apelaciones.


Luis F. Estrella Martínez
Juez Asociado